UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF  NEW YORK

_____

SHERRIE A. DAVIS,

                                Plaintiff

-vs-

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                Defendant.

_____

DECISION AND ORDER

15-CV-6082 CJS

APPEARANCES

| | |
|---|---|
| For the Plaintiff: | Elizabeth A. Haungs, Esq.<br>Justin M. Goldstein, Esq.<br>Law Offices of Kenneth Hiller<br>6000 North Bailey Avenue, Suite 1A<br>Amherst, New York 14226 |
| For the Defendant: | Joshua L. Kershner, Esq.<br>Social Security Administration<br>Office of General Counsel<br>26 Federal Plaza, Room 3904<br>New York, New York 10278 |
| | Kathryn L. Smith, A.U.S.A.<br>Office of the United States Attorney<br>for the Western District of New York<br>100 State Street, Room 620<br>Rochester, New York 14614 |

INTRODUCTION

     This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant"),

which denied the application of Sherrie Davis ("Plaintiff") for Social Security Disability

Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") disability benefits.

1

Now before the Court is Plaintiff's motion (Docket No. [#9]) for judgment on the pleadings and Defendant's cross-motion [#15] for judgment on the pleadings.  Plaintiff's application is denied and Defendant's application is granted.

BACKGROUND

The reader is presumed to be familiar with the Parties' submissions, which contain detailed recitations of the pertinent facts.  The Court has reviewed the entire record and will offer only a brief summary of those facts.  Plaintiff, who was age 46 at the time of the hearing, earned her GED degree and completed two semesters of college.  Plaintiff's past relevant work experience includes factory assembly-line work and delivering pizzas. Plaintiff has been diagnosed with ailments including panic disorder, anxiety disorder, depressive disorder, alcohol and drug abuse, and carpal tunnel syndrome.  Plaintiff maintains that those conditions are disabling, but the only ailment for which she has ever sought much treatment is alcoholism,[1] and her attempts at treatment have been sporadic and non-committal at best, resulting in her either quitting or being terminated from treatment programs on multiple occasions.[2] (495, 503-504, 512, 514, 556, 608-609, 615-616).

Plaintiff's testimony and written statements indicate that she believes her most "disabling" condition to be "multiple chemical sensitivity syndrome" ("MCS"), which she claims causes "excruciating" pain and limits most physical activity. (56; 49; 53; 56-58; 59-

---

[1]On October 3, 2012, Plaintiff estimated that she drank "84 cans of beer per week," or one twelve-pack per day. (641).  Unless otherwise noted, all citations are to the administrative record.

[2]For example, Plaintiff , whose testimony indicates that she is intelligent and articulate, claims to have had a painful  "neurological problem" with her legs for approximately two years, but has no definite information about it and has not sought recommended treatment. *See, e.g.*, Hearing Transcript (58) ("Q. What's going on with your legs?  A. I don't know what the word is, neuro, I don't know.  It's something to do with, it's something to do with nerves or something, I'm not sure.").

2

60, 274-282; see also, 304, 433).[3]   Indeed, when Plaintiff applied for SSDI and SSI

benefits, she completed sworn statements attributing her disability almost entirely to

"multiple chemical sensitivity"/"MCS syndrome." (274-282; 293).[4]   Plaintiff indicates that

an allergist/immunologist, "Dr. Roth," diagnosed her with MCS in 2005, though there is

no record of such a diagnosis. (310).   Nor is there any mention of such a condition in

Plaintiff's medical records prior to the alleged onset date.   Even after the alleged onset

date, the medical record contains little mention of such a condition, except to note that

Plaintiff claims to have the condition. (418).   For example, on February 25, 2011,

Plaintiff's doctor noted that Plaintiff claimed to have a condition triggered by "perfumes

and chemicals," but reported finding no symptoms, and indicated that there seemed to

be "a degree of anxiety or other concurrent psychiatric illness associated with this

complaint." (427).

   In June 2012, Plaintiff indicated that her "most severe" chemical sensitivity

symptoms had mostly "gone away" after taking a course of antibiotics for an unrelated

infection,[5] and as a result, her primary care physician ("PCP"), Myra Wiener, M.D.

("Wiener"), indicated that she could return to work. (350).[6]   However, four months later,

---

[3]Plaintiff claims that she developed chemical sensitivities after working in an electronics factory. (425). The record indicates that Plaintiff briefly worked for IEC Electronics in 1997. (263).  There is no indication that "MCS" prevented Plaintiff from working between 1997 and  2008.  Also, Plaintiff indicates that "MCS" makes it "intolerable" for her to be around cigarette smoke (305), but she has continued to smoke a pack of cigarettes per day for the past thirty years. (642).

[4]Plaintiff also mentioned carpal tunnel syndrome, but indicated that she "rarely" had carpal tunnel "flare ups." (281).

[5]*See*, (604) ("She just finished doxycycline and feels that this improved her chemical sensitivities syndrome symptoms.").

[6]In July 2012, Plaintiff reported told her doctor that she had "'sensitivities' to gluten, dairy, MSG and nitrites," but apparently did not mention chemicals or perfume. (531).

on October 23, 2012, at the hearing before the ALJ, Plaintiff did not mention such an improvement, but instead indicated that her chemical sensitivity symptoms were still crippling. (49, 56, 58, 59-60, 61).

Plaintiff contends that she became disabled from working on September 30, 2008. (207). However, the record indicates that Plaintiff stopped working that year "because of other reasons," namely, that she "was let go." (295). Alternatively, Plaintiff has indicated that she stopped working because she had a hysterectomy (376, 406), though her hysterectomy occurred in 2010. (572, 585).

The record indicates that Plaintiff believes that her symptoms are more disabling than her medical providers believe them to be. For example, on April 7, 2011, Nurse Practitioner Cynthia Cappiello reported that Plaintiff had asked her for a note indicating that she was incapable of working 20 hours per week, but Cappiello declined because she saw no reason that Plaintiff could not work. (419) ("I declined to giver her this note today . . . I see no indication that she cannot work."). Similarly, in June 2012, Dr. Wiener, opined that Plaintiff could work, but Plaintiff disagreed. (350). Moreover, while Plaintiff claims to be permanently disabled, the medical providers who have examined her have at most indicated that she is temporarily unable to work.[7]

In connection with Plaintiff's current[8] application for SSDI and SSI disability

_____

[7] *See* (587) (Dr. Toor indicated that Plaintiff was limited to working 20 hours per week for six months); (593) (FNP Finnity indicated that Plaintiff was unable to work for six months since she needed to focus on treatment/rehab); (NP Bilsback indicated that Plaintiff was unable to work for 3 months while in rehab). The records indicate that Plaintiffs doctors expected that she would be able to return to work after treatment if she could stop drinking. *See, e.g.* (582) ("She will be seeking VESID [vocational training] later in her recovery process."); (628) ("Patient would likely be a good candidate for VESID to help her find an area in which she can work given her history of tendinitis, once she is sober.").

[8] She was previously denied benefits in 2005. (271).

benefits, she was examined by several consultative medical doctors and psychologists.

On October 23, 2012, Plaintiff, accompanied by her attorney, testified before an Administrative Law Judge ("ALJ").  On April 12, 2013, the ALJ issued a  detailed and well-reasoned decision finding that Plaintiff was not disabled.  The ALJ made that determination at Step 5 of the five-step sequential analysis that the Commissioner uses to evaluate disability claims.[9]  As part of the ALJ's decision, he found that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work.  For example, the ALJ found that Plaintiff was restricted in her ability to lift and carry, and in her ability to interact with supervisors, co-workers and the public.  In making his RFC determination, the ALJ found that Plaintiff's statements about the severity of her conditions were not entirely credible, because they were inconsistent with other statements that she made about her daily activities, and because Plaintiff had made only limited attempts to obtain treatment.

Plaintiff appealed to the Appeals Council, and submitted additional evidence, including notes from nurse practitioner Denise Bilsback, N.P ("Bilsback").  However, the Appeals Council declined to review the ALJ's determination.  In that regard, the Appeals Council indicated that Plaintiff's submission "d[id] not provide a basis for changing the [ALJ's] decision," but it did not discuss Bilsback's notes.

Plaintiff now maintains that the Commissioner's decision must be reversed for two reasons:  First, the Appeals Council did not explain why Bilsback's notes failed to provide a basis for review; and second, the ALJ's credibility determination was not supported by

---

[9]*See, Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (Explaining the five-step sequential analysis).

substantial evidence.

DISCUSSION

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."  The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501.

### *The ALJ's Credibility Determination*

Administrative Law Judges are required to evaluate a claimant's credibility concerning pain according to the factors set forth in the Commissioner's regulations, which state, in relevant part:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By objective medical evidence, we mean medical signs and laboratory findings as defined in § 404.1528 (b) and (c). By other evidence, we mean the kinds of evidence described in §§ 404.1512(b)(2) through (8) and 404.1513(b)(1), (4), and (5), and (d). These include statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to

work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. We will consider all of your statements about your symptoms, such as pain, and any description you, your treating source or nontreating source, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work.

***

In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you. (Section 404.1527 explains how we consider opinions of your treating source and other medical opinions on the existence and severity of your symptoms, such as pain.) We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a).  The regulation further states, in

relevant part:

Factors relevant to your symptoms, such as pain, which we will consider include:
(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); 20 C.F.R. § 416.929(c)(3).  However, while an ALJ is

required to consider these factors, he is not required to explicitly discuss each one. *See,*

*Pellam v. Astrue*, 508 Fed.Appx. 87, 91, 2013 WL 309998 at *3 (2d Cir. Jan. 28, 2013)

("The ALJ did not apply an incorrect legal standard when judging the credibility of

Pellam's testimony. Although the ALJ did not explicitly discuss all of the relevant factors,

Pellam has failed to point to any authority requiring him to do so. In any event, the ALJ

cited the applicable regulation, 20 C.F.R. § 404.1529, explicitly mentioned some of the

regulatory factors (such as Pellam's limited use of pain medication), and stated that he

considered all of the evidence required by § 404.1529.").  If it appears that the ALJ

considered the proper factors, his credibility determination will be upheld if it is supported

by substantial evidence in the record. *Id*.

In this case, Plaintiff correctly points out that the ALJ based his credibility finding

partly on the fact that he found Plaintiff's statements about the severity of her conditions

to be inconsistent with other statements that she made about her activities of daily living.

In that regard, the ALJ stated in pertinent part:

> The claimant's allegations of disability are only partially credible.  The
> claimant has alleged severely limited activities of daily living due to physical
> problems.  However, the record does not support the allegations.  Further,
> the allegations are inconsistent with the treatment records, which often
> state that the claimant is engaging in activities of daily living with no
> problems.

(27).  Plaintiff maintains that the ALJ mis-characterizes the record, since Plaintiff

engaged in only "minimal" daily activities, which "were hardly indicative of the ability to

perform light work."[10]  Plaintiff also complains that the ALJ failed to cite any portion of the

record to support his finding.

---

[10]See, Docket No. [#9-1] at pp. 18-19.

However, the Court finds that the ALJ's observations about Plaintiff's activities of daily living are supported by substantial evidence.  At the outset, the Court disagrees with Plaintiff's contention that the ALJ failed to cite to evidence supporting his credibility determination.  In fact, the ALJ referred to conflicting evidence of Plaintiff's activities multiple times in his decision. (22-23[11], 24[12], 25-26[13]).  Moreover, as alluded to by the ALJ, the record is replete with inconsistent or contradictory statements that Plaintiff has made about her symptoms.  For example, at the hearing, Plaintiff testified that she is essentially incapable of much physical activity.[14]  However, Plaintiff previously told her doctor that "she enjoys exercising." (372).  Plaintiff also claims to have long-standing issues with depression and anxiety, but on February 24, 2011, she "denie[d] any problems with mood." (426).  Similarly, on April 20, 2011, Plaintiff denied being depressed. (428) ("The claimant reports no depressive symptoms.").  Plaintiff has told some examiners that she has major problems sleeping, while telling other examiners that she has no problems sleeping. Specifically, on February 24, 2011, Plaintiff denied having

---

[11]"The claimant lives in a boarding room at the YWCA.  She is responsible for her own cooking, cleaning and laundry.  She testified she showers daily but that she will not do housework daily.  . . .  The claimant testified she is able to go to the store but will go when it is not busy.  She has a boyfriend  that she visits frequently  and she also visits with her daughter on a weekly basis.  She is able to take the bus but now is transported by her boyfriend.  . . .  The claimant testified she 'gets lost in her thoughts' and has trouble staying focused.  She states she is able to handle her money.  At the hearing, the claimant testified she has not owned a television in three years; however, in March 2011 she stated her hobbies included reading, music, television and movies." (citations omitted).

[12]"Despite testifying  she lives alone and is responsible for her activities of daily living, the claimant alleges she is not able to lift, stand, walk, sit, claim stairs, kneel, squat, reach, or use her hands at all due to pain, weakness and fatigue.  She also states she has difficulty seeing, hearing, and talking."

[13]"[In April 2011,] [t]he claimant reported she was able to do cooking, cleaning, laundry, shopping, showering, and reading.  . . .  [In November 2011,] she reported she enjoyed taking walks, exercising, cooking, music, socializing, arts and crafts, games and movies." (citations omitted).

[14]See, Record at 56, 57 ("I really don't do anything on a daily basis."), 58, 60

"any problems with . . . sleep" (426), while two months later, on April 20, 2011, she claimed to have "difficulty falling asleep, [and] frequent awakening two times a night." (428); *see also*, (375) (April 12, 2011 office note:  "Sleep disturbance:  No apparent problem."); (393) (February 24, 2011 office note:  "She denies any issues with sleep or diet.").

Plaintiff also maintains that the ALJ's credibility determination is erroneous insofar as it suggested that Plaintiff was seeking treatment "primarily in order to generate evidence" of disability. (27).  Plaintiff contends that such a view is "not borne out by the record."  In his decision, the ALJ stated, in pertinent part: "She later stated that she felt she did not need treatment and was only going because it was mandated (Ex. B12F, p. 21).  She returned for mental health treatment briefly in November 2011, because her "SSI lawyer and PCP wanted" her to be in treatment (Ex. B12F, p. 20)."  The ALJ was mistaken in asserting that Plaintiff said that she "was only going [to treatment] because it was mandated."  Actually, Plaintiff "denied"  that mental health treatment was "mandated" in order for her to receive welfare benefits. (503).  Overall, though, the ALJ's observation on this point is supported by substantial evidence.  For example, as the ALJ observed, notes from Evelyn Brandon Mental Health Center indicate that Plaintiff was "ambivalent about treatment," was "not able to identify a clear goal," had previously stopped attending treatment because she "fe[lt] as though she didn't really need treatment," and was only seeking treatment at the suggestion of her attorney and doctor. (502-503).

Plaintiff also maintains that the ALJ's credibility determination was flawed because he found that Plaintiff's lack of diligence in obtaining treatment detracted from her credibility, without first considering whether her "psychological and emotional difficulties"

may have "affected her ability to understand her own need for treatment."  The

Commissioner has stated that,

> statements may be less credible if the level or frequency of treatment is
> inconsistent with the level of complaints, or if the medical reports or records
> show that the individual is not following the treatment as prescribed and
> there are no good reasons for this failure. However, the adjudicator must
> not draw any inferences about an individual's symptoms and their
> functional effects from a failure to seek or pursue regular medical treatment
> without first considering any explanations that the individual may provide, or
> other information in the case record, that may explain infrequent or irregular
> medical visits or failure to seek medical treatment. The adjudicator may
> need to recontact the individual or question the individual at the
> administrative proceeding in order to determine whether there are good
> reasons the individual does not seek medical treatment or does not pursue
> treatment in a consistent manner. The explanations provided by the
> individual may provide insight into the individual's credibility.

Titles II & Xvi: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of

an Individual's Statements, SSR 96-7P (S.S.A. July 2, 1996).

In the instant case, the Court finds that the ALJ did not err.  In reaching its

conclusion, the Court reiterates that at the hearing, Plaintiff and her attorney chose to

emphasize Plaintiff's alleged *physical* complaints and pain resulting from her chemical

sensitivity condition and carpal tunnel syndrome, while offering comparatively little

testimony concerning her depression and anxiety generally, and no evidence tending to

indicate that her mental or emotional problems had prevented her from obtaining

treatment.  On the other hand, the record contains statements from Plaintiff in which she

explains why she did not actively pursue certain treatments.  For example, with regard to

mental health treatment, Plaintiff stated that she did not think that she needed treatment:

"She reports feeling as though her anxiety and depression ha[ve] always been justified

by life's circumstances.[15] . . . She reports that she ceased attending MH appointments in the past due to feeling as though she didn't really need treatment." (503); *see also*, (527) (Referring to Plaintiff's "ambivalence regarding treatment."). The ALJ specifically referred to that document when observing that Plaintiff "stated that she felt she did not need treatment." (25). Inasmuch as Plaintiff had already explained why did not pursue treatment, the Court does not find that the ALJ erred by failing to pursue the issue further before making his credibility determination.

### *The Appeals Council's Decision Not to Review the ALJ's Decision*

Plaintiff maintains that the Appeals Council erred by denying review without discussing Nurse Practitioner Bilsback's notes, which had been submitted along with the request for review. Plaintiff contends that the Appeals Council was obligated to discuss the newly-submitted evidence, since it contradicted the ALJ's RFC determination. *See*, Docket No. [#16] ("[T]he Appeals Council offered no more than boilerplate language to support its denial of review. This was insufficient based on the other source opinion of NP Bilsback that directly conflicted with the ALJ's RFC finding."). The Second Circuit recently reiterated the law on this point by stating:

> Once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the "administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). If the Appeals Council denies review of a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision.

*Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (citation omitted). On the other

---

[15]The record indicates that Plaintiff has had a very difficult life, marked by physical and verbal abuse from parents and a former spouse, and substance abuse by family members and friends.

hand, the Appeals Council does not err by declining to review an ALJ's decision, and is not required to give a detailed explanation for its decision, when the newly-submitted evidence does not dramatically alter the weight of the evidence. See, *Bushey v. Colvin*, 8:11-CV-00031-RFT (N.D.N.Y.), *affirmed*, 552 Fed.Appx. 97, 98 (2d Cir. Jan. 29, 2014) ("We do not believe that the Appeals Council erred by refusing to review the ALJ's decision in light of the new evidence that Bushey submitted to that body. The Appeals Council had substantial evidence supporting its decision to decline review, as the new evidence that Bushey presented did not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case.").[16]

Accordingly, the issue before the Court is whether Bilsbacks' notes "altered the weight of the evidence so dramatically as to require the Appeals Council to take the case." The Court finds that it did not. To begin with, Bilsback is a nurse practitioner, which is considered an "other source," as opposed to an "acceptable medical source." *See, Genier v. Astrue*, 298 Fed. Appx. 105, 108 (2d Cir. 2008) ("[N]urse practitioners and physicians' assistants are defined as 'other sources' whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight.") (citation omitted). Moreover, Bilsback apparently examined Plaintiff on only one occasion, October 3, 2012 (641-645), and her physical examination of Plaintiff was essentially negative for any abnormalities (639-640), though

---

[16]On appeal the claimant in Bushey had argued that the Appeal Council's "terse" "boilerplate" decision denying review was insufficient, *see*, Appellant Bushey's appellate brief to the Second Circuit, 2013 WL 2286627 at **20 & 28, but the Second Circuit disagreed.

Plaintiff complained of nasal congestion, dizziness and wrist pain.[17]  (641-645).

Nevertheless, Bilsback completed a form for the Monroe County Department of Social

Services, indicating that Plaintiff should not work for three months, in order to allow her to

attend treatment/counseling. (638).  Inexplicably, given the entirely negative physical

examination, Bilsback indicated that Plaintiff was "moderately limited"(2-4 hours per day)

with regard to  walking, standing, pushing, pulling and bending, and "very limited" (1-2

hours per day) with regard to lifting/carrying. (640).  Nevertheless, Bilsback's report was

actually less favorable overall to Plaintiff than the report of Harbinder Toor, M.D. (585-

588), which the ALJ gave "significant weight" when reaching his RFC determination. (25).

For all of these reasons, the Court finds that Bilsback's report did not "dramatically alter

the weight of the evidence," and that the Appeals Council therefore did not err in deciding

not to review the ALJ's determination.

CONCLUSION

Defendant's motion for judgment on the pleadings [#15] is granted and Plaintiff's

motion [#9] for judgment on the pleadings is denied.  The Clerk of the Court is directed to

close this action.

So Ordered.

Dated: Rochester, New York
          January 31, 2016          ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[17]Bilsback opined that Plaintiff's wrist pain was "probably due to neuropathy from ETOH (alcohol) abuse." (644).  Bilsback further noted that Plaintiff had "no weakness, or decrease[d] strength" in her hands . (641).

14